UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
AMERICAN MEDICAL DISTRIBUTORS, INC.,

                Plaintiff,

  -against-

SATURNA GROUP CHARTERED ACCOUNTANTS,
LLP; PLS, CPAS; and, MACDONALD TUSKEY,

                Defendants.
------------------------------------------------------------------------x

Case No.:

Civil Action

**COMPLAINT**

      Plaintiff, American Medical Distributors, Inc., complaining of defendants by its undersigned attorneys, states and alleges as follows:

## JURISDICTION

      1.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum of $75,000.00, exclusive of any interest and costs, and is between citizens of different States and citizens of a State and citizens or subjects of a foreign state.

## VENUE

      2.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim asserted occurred.

## PARTIES TO THE ACTION

      3.     Plaintiff American Medical Distributors, Inc. ("AMD") is a corporation, organized and existing under the laws of the State of New York, presently in good standing,

with its principal place of business located at 265 Sunrise Highway, Rockville Centre, County of Nassau, State of New York.

4. Defendant Saturna Group Chartered Accountants, LLP ("Saturna") is, upon information and belief, a limited liability partnership organized and existing under the laws of Canada, with a place of business located at 1066 West Hastings Street, Vancouver, British Colombia, Canada, engaged in the business of providing professional accounting services.

5. Defendant PLScpas ("PLS") is, upon information and belief, a partnership organized and existing under the laws of the State of California, with its principal place of business located at 4725 Mercury Street, San Diego, California, engaged in the business of providing professional certified public accounting services.

6. Defendant MacDonald Tuskey ("MT") is, upon information and belief, an entity organized and existing under the laws of Canada, with its principal place of business located at 570 Granville Street, Vancouver, British Colombia, Canada, engaged in the business of providing legal services.

## COUNT ONE

7. At all relevant times herein mentioned, Redhawk Holdings Corp., formerly known as Independence Energy Corp. ("IDNG"), was corporation organized and existing under the laws of the State of Nevada, with its principal place of business located at 3020 Old Ranch Parkway, Seal Beach, California.

8. At all relevant times herein mentioned, IDNG was, and presently is, a publicly-traded company, with its shares being traded in the Over-the-Counter markets.

9. As a publicly-traded company, IDNG is required to file periodic financial and registration statements with the Securities and Exchange Commission ("SEC"), including, but not limited to, Form 8-K, Form 10-Q and amendments thereto as required (the "SEC Filings").

10. The purpose of the SEC Filings is to notify investors in United States public companies of specified events that may be important to shareholders or the SEC, and provide investors and the trading public with accurate information concerning operations of publicly-traded companies.

11. At all relevant times herein mentioned, IDNG retained defendant Saturna to provide all of its accounting needs, including, but not limited to, preparation of profit and loss statements, balance sheets, revenue statements, accounts payable, accounts receivable and assets and asset valuations (the "Financial Statements").

12. At all relevant times herein mentioned, the Financial Statement prepared by defendant Saturna were included in, and made part of, IDNG's SEC Filings.

13. The preparation of accurate financial statements is essential for the investing public of publicly-traded companies such as IDNG to make informed decisions concerning investing in such entities, and are intended to be relied upon by the investing public in making investment decisions.

14. As the accountants for IDNG, defendant Saturna had an affirmative duty to use reasonable care in the performance of the accounting services for which its was retained.

15. As the accountants for IDNG, defendant Saturna was required to render and perform the accounting services with uniform minimum standards and guidelines to financial accounting and reporting known as generally accepted accounting principles ("GAAP").

16. At all relevant times herein mentioned, defendant PLS was retained by IDNG as its independent registered public accounting firm to audit its books, financial statements, consolidated balance sheets, statements of operations, shareholder's equity and cash flows, and to express an independent opinion on these financial statements based on its audits.

17. At all relevant times herein mentioned, the independent audit opinions rendered by defendant PLS were included in, and made part of, IDNG's SEC Filings.

18. Proper audits of IDNG's financial statements are required to protect creditors and the investing public.

19. As the auditor for IDNG, defendant PLS had a duty to use reasonable care in the performance and delivery of the auditing services.

20. As auditor for IDNG, PLS was required to render such services in accordance with standards of the Public Company Accounting Oversight Board ("PCAOB").

21. PCAOB standards require that defendant PLS plan and perform audits in such manner as to obtain reasonable assurance about whether the financial statements are free of material misstatements.

22. In performing audits of IDNG, defendant PLS was required to examine, on a test basis, evidence supporting the amounts and disclosures set forth in IDNG's financial statements, assess the accounting principles used and estimates made, and to evaluate the overall financial statement presentation.

23. Investors and the trading public depended on defendant PLS to ensure that the disclosures set forth in IDNG's financial statements fairly and accurately represented the true state of IDNG's business and financial affairs.

24. At all relevant times herein mentioned, defendant MT was retained by IDNG as its attorneys, responsible for the preparation, review and filing of all SEC Filings.

25. Proper preparation, review and filing of SEC Filings is required to protect creditors and the investing public.

26. As the attorneys for IDNG, defendant MT had a duty to use reasonable care in the performance and delivery of the legal services for which it was retained.

27. As the attorneys for IDNG, defendant MT had an affirmative duty to insure that the SEC Filings be truthful and not be misleading or false.

28. On March 31, 2014, plaintiff AMD entered into and closed an Asset Purchase Agreement (the "Agreement") with IDNG.

29. Pursuant to the terms of the Agreement, AMD agreed to assign all right, title and interest in and to a certain distribution contract dated November 27, 2013 with HuBDIC Co. Ltd. (the "HuBDIC Contract"), a Korean corporation, pursuant to which AMD has been

granted the exclusive right to distribute in the Americas certain professional and consumer grade non-ouch thermometers known as the FS700 Pro and FS-700, and any future versions

30. As additional consideration, AMD also paid to IDNG $60,000 and any assets of AMD related to its distribution business, including, all sales leads and related materials (collectively, including the HuBDIC Agreement, the "AMD Assets").

31. In consideration of the AMD Assets, IDNG agreed to distribute an aggregate of 152,172,287 shares of its common stock, constituting fifty percent (50%) of its total authorized shares, to four designees of AMD.

32. Annexed hereto as Exhibit "A" is a copy of the Agreement, the contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

33. The AMD Assets were valued at $320,431.00 based on the fair value of the shares of IDNG stock distributed pursuant to the Agreement on the date of their issuance.

34. The value of IDNG stock distributed pursuant to the Agreement was fixed and determined on the basis of IDNG's market value based on the information set forth in its Financial Statements and SEC Filings.

35. The sole assets of IDNG as specifically disclosed and set forth in its Financial Statements and all of its SEC Filings as of the date of the closing of the transaction under its Agreement with AMD consisted of oil and gas leases in four wells located in Pottawatomie County, Oklahoma (the "Quinlan Lease"), and oil and gas properties in Coleman County, Texas (the "Coleman Leases").

36. Prior to the closing of the transaction under the Agreement, IDNG had decided to discontinue its interest in the Quinlan Lease.

37. Subsequent to the closing of the transaction under the Agreement, defendants disclosed such event in the SEC Filings, which resulted in an impairment of $147,739 in IDNG's value to reflect the net liabilities owed on oil and gas production.

38. During the year ended January 31, 2014, IDNG elected not to renew its interest in the Coleman Lease, which resulted in a recognized impairment of $335,285 to reflect the book value of such Lease.

39. At all relevant times herein mentioned, defendants, and each of them, knew and were aware that IDNG had discontinued its interests in the Quinlan and Coleman Leases.

40. The discontinuance of IDNG's interests in the Quinlan and Coleman Leases was a material term that should have been disclosed by defendants on Form 8-K in the SEC Filings.

41. In all SEC Filings made as of the date of the closing of the transaction under the Agreement, defendants, and each of them, continued to list the Quinlan Lease and the Coleman Lease as assets of IDNG.

42. In all SEC Filings made as of the date of the closing of the transaction under the Agreement, defendants, and each of them, failed to disclose IDNG's discontinuance of its interests in the Quinlan Lease and the Coleman Lease.

43. IDNG's discontinuance of its interests in the Quinlan Coleman Leases had a an adverse effect on the fair value of shares distributed pursuant to the Agreement.

44. Defendants Saturna's failure to disclose IDNG's discontinuance of its interests in the Quinlan and Coleman Leases in the financial statements it prepared and included in the SEC Filings constituted a gross departure from accepted standards of accounting.

45. Saturna's inclusion of IDNG's interests in the Quinlan and Coleman Leases in the financial statements prepared and included in the SEC Filings constituted a gross departure from accepted standards of accounting.

46. Defendant PLS's failure to disclose IDNG's discontinuance of its interests in the Quinlan Lease and Coleman Lease in the financial statements it reviewed and included in the SEC Filings constituted a gross departure from accepted standards of accounting.

47. Defendant PLS's inclusion of IDNG's interests in the Quinlan and Coleman Leases in the financial statements it reviewed and which were included in the SEC Filings constituted a gross departure from accepted standards of auditing principles.

48. Defendant MT's failure to disclose IDNG's discontinuance of its interests in the Quinlan Lease and Coleman Lease in the SEC Filings it prepared and filed constituted a gross departure from accepted standards of legal services pertaining to securities law.

49. Defendant MT's inclusion of IDNG's interests in the Quinlan and Coleman Leases in the SEC Filings it prepared and filed constituted a gross departure from accepted standards of legal services pertaining to securities law.

50. Immediately upon closing of the transaction pursuant to the Agreement, IDNG's sole assets consisted of the AMD Assets.

51. Defendants failure to disclose IDNG's discontinuance of its interests in the Quinlan and Coleman Leases in the SEC Filings they prepared, reviewed and filed resulted in an overvaluation of the shares of IDNG by no less than $1,000,000.00 as of the date of issuance of shares pursuant to the Agreement.

52. As a direct and proximate result of defendants' negligence, AMD suffered and sustained losses and damages in an amount to be proven at trial, but in no event less than $700,000.00, with interest thereon from March 31, 2014.

53. By reason of the foregoing, defendants, and each of them, should be held jointly and severally liable to plaintiff AMD in an amount to be proven at trial, but in no event less than $700,000.00, with interest thereon from March 31, 2014.

## DEMAND FOR TRIAL BY JURY

54. Plaintiff hereby demands trial by jury of all issues raised by way of this action.

WHEREFORE, plaintiff respectfully demands judgment as follows:

A. Against defendants SATURNA GROUP CHARTERED ACCOUNTANTS, LLP, PLSCPAS and MACDONALD TUSKEY, jointly and severally, in an amount to be determined at trial, but in no event less than $700,000.00, with interest thereon from March 31, 2014; and,

B.      Awarding it the costs and disbursements of this action, together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        November 12, 2015

MASSOUD & PASHKOFF, LLP
Attorneys for Plaintiff

By: _____
Ahmed A. Massoud, Esq.
AAM:5361
1700 Broadway
41st Floor
New York, New York 10019
(212) 207-6771