UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

AMERICAN MEDICAL DISTRIBUTORS, INC.,

                        Plaintiff,

      -against-

SATURNA GROUP CHARTERED ACCOUNTANTS, LLP;
PLS, CPAS; MACDONALD TUSKEY; and REDHAWK
HOLDINGS CORP. f/k/a INDEPENDENCE ENERGY CORP.,

                        Defendants.
--------------------------------------------------------------------------------x

REDHAWK HOLDINGS CORP. f/k/a INDEPENDENCE
ENERGY CORP.,

                        Third-Party Plaintiff,

      -against-

GREGORY ROTELLI,

                        Third-Party Defendant.
--------------------------------------------------------------------------------x

**FILED**
**CLERK**
7/15/2016 3:19 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Memorandum of
Decision & Order
15-cv-6532 (ADS)(GRB)

## APPEARANCES:

**Massoud & Pashkoff, LLP**
*Attorneys for the Plaintiff American Medical Distributors, Inc.*
1700 Broadway, 41st Floor
New York, NY 10019
        By:   Ahmed A. Massoud, Esq.
               Lisa Pashkoff, Esq., Of Counsel

**Wood Smith Heming & Berman LLP**
*Attorneys for the Defendant Saturna Group Chartered Accountants LLP*
222 E. 41st Street, 21st Floor
New York, NY 10017
        By:   Christopher F. Lyon, Esq., Of Counsel

**Hantman & Associates**
*Attorneys for the Defendant PLS CPAs*
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
        By:   Robert J. Hantman, Esq., Of Counsel

**Hunter Taubman Fischer LLC**
*Attorneys for the Defendant MacDonald Tuskey*
255 University Drive
Coral Gables, FL 33134
       By:   Mark D. Hunter, Esq.
           Jenny Johnson-Sardella, Esq., Of Counsel

**Gordon Arata McCollam Duplantis & Eagan LLC**
*Attorneys for the Defendant/Third-Party Plaintiff Redhawk Holdings Corp. f/k/a Independence Energy Corp.*
400 E. Kaliste Saloom Rd., Suite 4200
Lafayette, LA 70508
       By:   Samuel E. Masur, Esq., Of Counsel

<u>NO APPEARANCE:</u>

**Gregory Rotelli**
*Third-Party Defendant*

**SPATT, District Judge:**

On November 16, 2015, the Plaintiff American Medical Distributors, Inc. ("AMD" or the "Plaintiff"), a New York corporation, commenced this action against Saturna Group Chartered Accountants, LLP ("Saturna Group"), a Canadian accounting firm; PLS CPAs ("PLS"), a California corporation; and MacDonald Tuskey ("MacDonald Tuskey"), a Canadian law firm. In the complaint, it is alleged that these entities negligently performed professional services on behalf of a common client, namely, Redhawk Holdings Corp. f/k/a Independence Energy Corp. ("Redhawk"), a Nevada corporation. According to the Plaintiff, such conduct resulted in materially false financial statements being filed on Redhawk's behalf with the Securities and Exchange Commission ("SEC"), upon which AMD detrimentally relied in negotiating a sale of its assets to Redhawk.

Between January 13, 2016 and January 22, 2016, each of the Defendants filed a motion to dismiss the complaint, which motions were subsequently rendered moot when, on February 3, 2016, AMD filed an amended complaint. <u>See</u> Docket Entry ("DE") [22]. Among other things, the amended complaint added a direct claim against Redhawk.

On February 29, 2016, the Defendants filed renewed motions, DE [28, 29, 30], seeking to dismiss the amended complaint. In particular, Saturna Group and PLS moved under Federal Rules

of Civil Procedure ("Fed. R. Civ. P." or the "Rules") 12(b)(2) and 12(b)(6) to dismiss the amended complaint for lack of personal jurisdiction and failure to state a claim.  Alternatively, PLS moved under 28 U.S.C. § 1406 to transfer venue to the United States District Court for the Southern District of California.  MacDonald Tuskey moved under Rules 12(b)(1), 12(b)(3), and 12(b)(6) to dismiss the amended complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim.

On March 18, 2016, Redhawk filed an answer, DE [33], substantially denying the Plaintiff's allegations; asserting cross-claims against the co-Defendants based on common law contribution, fraud, negligence, and breach of contract; and asserting a counterclaim against the Plaintiff for attorneys' fees and costs.

On April 1, 2016 and April 11, 2016, Saturna Group and MacDonald Tuskey filed additional motions, DE [34, 36], under Rules 12(b)(2) and 12(b)(6), seeking to dismiss Redhawk's cross-claims. However, these motions were also rendered moot when, on April 21, 2016, Redhawk filed an amended answer, DE [39], which again asserted cross- and counterclaims, but this time also added third-party claims against an individual officer and director of Redhawk, namely, Gregory Rotelli. Mr. Rotelli was apparently served with the third-party complaint on July 7, 2016, and his time to respond has not yet expired.

On May 9, 2016, Saturna Group and MacDonald Tuskey filed renewed motions, DE [41, 42], to dismiss Redhawk's amended cross-claims under Rules 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim.

Presently before the Court are the motions by Saturna Group, PLS, and MacDonald Tuskey to dismiss the Plaintiff's amended complaint; and the motions by Saturna Group and MacDonald Tuskey to dismiss Redhawk's amended cross-claims.

For the reasons that follow, the motions by Saturna Group and PLS to dismiss the amended complaint under Rule 12(b)(2) for lack of personal jurisdiction are granted.  Further, the Court finds

that the remainder of this case is governed by a valid forum selection clause, which is enforceable as against AMD, Redhawk, and MacDonald Tuskey, and which requires that this case be transferred to the United States District Court for the Southern District of New York.

## I.     BACKGROUND

The following salient facts are drawn from the amended complaint and are construed in favor of the Plaintiff.

Redhawk, formerly known as Independence Energy Corp., is a Nevada corporation with a principal place of business located in Seal Beach, California.  As a publicly-traded company, Redhawk is required to file periodic financial disclosure statements with the SEC (the "SEC Filings").  These apparently include, but are not limited to, documents known as Form 10-Q, a quarterly statement of a public company's financial position, and Form 8-K, a disclosure of certain major events that may be of importance to shareholders.  According to the Plaintiff, the purpose of the SEC Filings is to provide the SEC, the shareholders, and the investing public with accurate information concerning Redhawk's financial condition and operations.

On an annual basis between 2012 and 2014, Redhawk retained Saturna Group, a Canadian partnership of professional accountants, to prepare various financial documents (the "Financial Statements"), such as profit and loss statements, balance sheets, revenue statements, accounts payable, accounts receivable, and asset valuations.  These Financial Statements allegedly formed a part of Redhawk's SEC Filings.

According to the Plaintiff, it was imperative that the Financial Statements be accurate in order for the public to make informed investing decisions.  Accordingly, Saturna Group was allegedly under an obligation to exercise reasonable care in performing its accounting services for Redhawk, and to follow generally accepted accounting principles.

On or about April 9, 2014, Redhawk retained PLS, a California corporation, to independently audit and provide a professional opinion regarding the condition of its books and records.  PLS's

audit reports also allegedly formed a part of Redhawk's SEC Filings.  Therefore, the Plaintiff alleges that proper audits of Redhawk's financials were necessary to protect creditors and the investing public, and to ensure that Redhawk's public disclosures fairly and accurately represented the true state of its business and financial affairs.

Accordingly, PLS was allegedly under an obligation to exercise reasonable care in performing its auditing services, and to act in accordance with standards promulgated by the Public Company Accounting Oversight Board.

Finally, on an unspecified date, Redhawk retained MacDonald Tuskey, a Canadian law firm, to prepare, provide a legal review of, and file its SEC Filings.  According to the Plaintiffs, legal oversight was necessary to protect creditors and the investing public, and therefore, MacDonald Tuskey was under an obligation to exercise reasonable care in performing legal services, and to insure that important documents filed with the SEC were accurate and not false or misleading.

A.      The Asset Purchase Agreement

On March 31, 2014, the Plaintiff, a New York corporation with a principal place of business in Rockville Centre, entered into an Asset Purchase Agreement (the "APA") with Redhawk.

Pursuant to the agreement, AMD transferred all of the assets related to its distribution business (the "AMD Assets") to Redhawk, together with a $60,000 payment.

In exchange, AMD acquired 50% of Redhawk's common stock, valued on the date of its issuance at approximately $320,431.  The market value of Redhawk's stock – to which both parties agreed when negotiating the APA – was allegedly calculated using the information set forth in Redhawk's Financial Statements and SEC Filings.

In this regard, the Plaintiff alleges that the only assets Redhawk disclosed in its Financial Statements and SEC Filings were: (i) leaseholds in oil and gas wells located in Oklahoma (the "Oklahoma Leases"); and (ii) property interests in Texas (the "Texas Properties").

However, the Plaintiff alleges that, before closing on the APA, Redhawk decided to relinquish its interests in the Oklahoma Leases and the Texas Properties.  Neither Redhawk nor any of the other Defendants disclosed that fact to AMD.  In fact, at all relevant times prior to the closing, Redhawk's relevant SEC Filings identified the Oklahoma Leases and the Texas Properties as assets.  Allegedly, the relinquishment of these interests decreased Redhawk's value by approximately $483,024.

It is the Plaintiff's position that, at all relevant times prior to closing, the Defendants knew about Redhawk's decision to abandon its only valuable assets.  However, they improperly failed to advise AMD of this material fact or otherwise disclose it in the Financial Statements and SEC Filings.  The result, according to the Plaintiff, was a substantial overvaluation of Redhawk's worth at the time the APA was being negotiated.  A direct corollary was a diminution in the market value of the common stock that AMD ultimately agreed to accept as consideration under the APA.

Accordingly, the Plaintiff asserts a cause of action against Saturna Group, PLS, and MacDonald Tuskey for professional malpractice based on their preparation of the allegedly false Financial Statements and SEC Filings; and a cause of action against all of the Defendants for negligent misrepresentation and/or omission of material facts.

## II.   DISCUSSION

### A.   Personal Jurisdiction

The Court's analysis will begin with a discussion of its personal jurisdiction over Saturna Group and PLS, who, as noted above, both move under Rule 12(b)(2) to dismiss the amended complaint on this ground.

#### 1.   The Forum Selection Clause

In addition to federal diversity jurisdiction, the amended complaint alleges that a forum selection clause in the APA provides an alternative basis for the Court's personal jurisdiction over the Defendants.  See Am. Compl. ¶¶ 1-2.  In this regard, the Plaintiff refers to § 12(c) of the APA,

which provides, in relevant part, that the parties to the APA consent to the jurisdiction of the New York State courts situated in New York County and/or the United States District Court for the Southern District of New York ("SDNY").  See id., Ex. "A," at § 12(c).

This argument must be addressed first because, usually, "[w]here an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process."  United States Bank Nat'l Ass'n v. Ables & Hall Builders, 582 F. Supp. 2d 605, 615 (S.D.N.Y. 2008).

In this case, the parties to the APA unambiguously submitted to personal jurisdiction in New York, and none of the parties to the current action contends that the forum selection clause is unenforceable as a matter of law.  Therefore, § 12(c) is sufficient to confer upon the Court personal jurisdiction over the parties to the underlying agreement, namely, AMD and Redhawk.  See Saye v. First Specialty Ins. Co., No. 14-cv-5946, 2015 U.S. Dist. LEXIS 50243, at *12 (E.D.N.Y. Apr. 16, 2015) ("Under New York law, by entering into an agreement with a forum-selection clause, a party specifically consents to personal jurisdiction in New York courts, and waives any basis to dispute New York's jurisdiction"); see also Gramercy Advisors, LLC v. Coe, No. 13-cv-9069, 2014 U.S. Dist. LEXIS 118231, at *7 (S.D.N.Y. Aug. 25, 2014) ("A valid and enforceable forum selection clause confers personal jurisdiction consistent with New York's long-arm and constitutional due process requirements"); Koninklijke Philips Elec. v. Digital Works, Inc., 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue"); Farrell Lines v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997) ("[S]o long as the forum selection clause is enforceable, this court has personal jurisdiction over defendants and may enter a declaratory judgment against them").

However, a separate question arises with regard to whether the remaining Defendants, namely, Saturna Group, PLS, and MacDonald Tuskey, who are *not* signatories to the APA, may also be bound by the forum selection clause.

In this Circuit, a valid forum selection clause may be enforced against a non-signatory who is so closely-related to the actual signatories or the dispute that enforcement of the forum selection clause against it is reasonably foreseeable.  See Magi XXI, Inc. v. Stato della Citta del Vaticano, 818 F. Supp. 2d 597, 605-06 (E.D.N.Y. 2011)  (quoting In re Optimal U.S. Litig., No. 10-cv-4095, 2011 U.S. Dist. LEXIS 46745, at *40-*41 (S.D.N.Y. May 2, 2011)); see also LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 160 (E.D.N.Y. 2012) (Spatt, J.) (collecting cases); Firefly Equities LLC v. Ultimate Combustion Co., 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010) (observing that "there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard" (quoting In re Refco Sec. Litig., No. 07-mdl-1902, 2009 U.S. Dist. LEXIS 130683, at *40 (S.D.N.Y. Nov. 20, 2009) (Report and Recommendation), adopted, 2010 U.S. Dist. LEXIS 5832 (S.D.N.Y. Jan. 20, 2010))).

" 'A non-party is 'closely related ' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct.' " Magi XXXI, 818 F. Supp. 2d. at 606 (quoting Cuno, Inc. v. Hawyward Indus. Prods., No. 03-cv-3076, 2005 U.S. Dist. LEXIS 8886, at *17 (S.D.N.Y. May 10, 2005)).

In some situations, a "close business relationship" between the signatories and a non-signatory may satisfy this test.  See LaRoss, 874 F. Supp. at 160.  However, where courts have found such a "close business relationship" to exist, the facts typically indicated that the parties' business operations were essentially "intertwined."  See In re Refco., 2009 U.S. Dist. LEXIS 130683, at *40-*41; see also Bent v. Zounds Hearing Franchising, LLC, No. 15-cv-6555, 2016 U.S. Dist. LEXIS 3617, at *9-*10 (S.D.N.Y. Jan. 12, 2016) (observing that "[i]n most cases where a non-signatory has been found sufficiently 'closely related' to a signatory to a contract, such that a forum selection clause contained therein could be enforced against him, the non-signatory played an active role in the transaction or was a principal of the signatory company" (internal citations omitted)).

If the entities are not so clearly interconnected, at a minimum " 'the non-signatory must have been otherwise involved in *the transaction* in some manner.' "   Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d 6, 25 (E.D.N.Y. 2014) (Spatt, J.) (quoting Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors, 875 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2012)) (emphasis in original).

For example, in LaRoss, this Court ruled that a Florida corporation could be compelled to answer a complaint in the Eastern District of New York pursuant to a forum selection clause that it did not sign.   In that case, the non-signatory was "intimately connected" to the signatory/co-defendant and appeared "to function as essentially [its] subsidiary."   Further, the signatory's sole officer and director also served as one of the two managing members of the non-signatory, and thus the two entities shared common management.   The non-signatory also received funds pursuant to a revenue sharing provision in the underlying agreement.   Under those circumstances, this Court found that the non-signatory was so "closely related" to the dispute that it should have foreseen being bound to the forum selection clause in the agreement.

By contrast, in Leviton Mgf. Co. v. Reeve, 942 F. Supp. 2d 244 (E.D.N.Y. 2013) (Spatt, J.), this Court declined to enforce a forum selection clause against non-signatory attorneys who issued an allegedly faulty opinion letter in connection with a stock purchase agreement.   The Court acknowledged that the attorneys were, as a practical matter, arguably related to the agreement's signatories – *i.e.*, they acted as counsel for the sellers – and the dispute – *i.e.*, their alleged negligence formed the basis of the complaint.   However, they were not so closely related that it was foreseeable that they would be required to answer for their conduct in a New York court.

In particular, the Court noted that:

> The Plaintiff has not pointed to, and the Court has not uncovered, any case in which outside counsel was held to a forum selection clause contained in an agreement for a transaction in which that counsel provided some sort of due diligence or opinion.   It is simply too attenuated under the particular circumstances of this case to bind the Attorney Defendants to this provision.   The vast majority of cases that have found a non-signatory bound by a forum selection clause under the theory that they are "closely related" to the dispute or the signatory, have done so where the non-signatory had a far more active role in the

> transaction . . . or where the non-signatory had an active role in the company that was the signatory. . . .
>
> While there is certainly a business relationship between [the Florida corporation] and [the attorneys], it is not the type of close business relationship that other courts have found imperative.

Id. at 258-59.

In this case, the Plaintiff essentially concedes that Saturna Group and PLS are not so closely related to the dispute so that they should be bound by the forum selection clause.  See Pl. Opp. Memo of Law, De [35], at 11 (admitting that "plaintiff in no way suggests that the moving defendants are legally bound by the forum selection clause").

However, even without such a concession, the facts of this case do not support the conclusion that either Saturna Group or PLS could have reasonably foreseen being compelled to litigate in a New York forum.  In particular, although a business relationship clearly existed, the business dealings between Redhawk, Saturna Group, and PLS were far too attenuated to constitute a "close business relationship."

In this regard, the Plaintiff does not contend, and the record does not support a finding that the commercial operations of Redhawk were in any way related, let alone intertwined, with those of Saturna Group and/or PLS.  Nor is there any reason to believe that any of these entities shared common ownership or management, or that they acted in concert or as subsidiaries of one another. On the contrary, the record reflects that these were little more than contractual counterparties for the provision of accounting services, ostensibly unrelated to Redhawk's eventual acquisition of the Plaintiff's assets.

Similarly, there is no evidence that either Saturna Group or PLS was meaningfully involved in the transaction in question.  Nor is there any allegation or proof that either entity had a stake, financial or otherwise, in the execution or performance of the APA.

In this regard, although AMD alleges that it detrimentally relied on the Financial Statements and Redhawk's SEC Filings when negotiating the APA, the record does not support the conclusion that Saturna Group and/or PLS advised, consulted, or otherwise participated in the underlying negotiations or preparation of that agreement, so that they could have reasonably foreseen being bound to the contractually-designated forum.

For example, Chang G. Park, an accountant associated with PLS, stated that his company's only relevant involvement came *after* the agreement was already consummated, when the company was retained simply to audit Redhawk's books and records for the year ending April 9, 2014.  See 2/26/16 Declaration of Chang G. Park ("Park Decl"), DE [28-1], at ¶ 9.  Park stated that prior to the date on which the APA was executed, his company had never even heard of the Plaintiff.  See id. at ¶ 18.  Nor had any of PLS's employees, agents, or directors had any contact with AMD before the agreement was signed.  See id.  None apparently communicated with Redhawk concerning AMD or the APA in any way.  See id.

Although Saturna Group apparently had a somewhat regular business relationship with Redhawk dating back to 2012, Henry Chow, a partner, stated unequivocally that his company "did not participate, assist, negotiate or otherwise facilitate" the APA, "nor did Saturna interact with AMD at any point leading up to that agreement."  See 1/22/16 Declaration of Henry Chow ("Chow Decl."), DE [30-2], at ¶ 20.

In this regard, the record contains copies of successive retainer agreements between Redhawk and Saturna Group from the relevant time period, which, in the Court's view, cannot plausibly be construed to include any services directly related to the transaction at issue.  See Chow Decl., Ex. "A."  In fact, these agreements state, in relevant part, that:

> [W]e [Saturna Group] will prepare financial statements from information provided by you [Redhawk] in accordance with United States generally accepted accounting principles.  We will not audit, review or otherwise attempt to verify the accuracy or completeness of such information  . . .

> The preparation of the financial statements is solely for the use of the Company and its management, directors, and employees.  We made no representations of any kind to any third party in respect of these financial statements and we accept no responsibility for their use by any third party.

DE [30-3].

Of particular importance, the Plaintiff does not materially dispute any of these assertions. Although counsel for AMD submitted an affidavit indicating that the APA was negotiated on behalf of the Plaintiff by New York lawyers, and was partially performed in New York, see Massoud Decl. ¶¶ 5-6, those facts fall well short of establishing any relevant connection to Saturna Group and PLS which would make it reasonable to find them "closely-related" to this dispute.

Thus, under these circumstances, the Court concludes that the interests of Saturna Group and PLS are not "completely derivative of," or "directly related to" Redhawk's interests in this dispute, and it would not be appropriate to find those Defendants subject to the forum selection clause in the APA.

2.    **Long-Arm Jurisdiction**

Having found that Saturna Group and PLS are not bound by the forum selection clause, the Court will next consider whether personal jurisdiction over them exists under New York's long-arm statute.

a.    **The Standard of Review**

Rule 12(b)(2) " 'permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery.' "  Brady v. Basic Research, L.L.C., 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (quoting A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines, 828 F. Supp. 2d 557, 562 (E.D.N.Y. 2011) (Spatt, J.)).

Although the Plaintiff bears the burden of establishing that the Court has proper jurisdiction to adjudicate the underlying claims, see Brady, 101 F. Supp. 3d at 229 (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez, 171 F.3d 779, 784 (2d Cir. 1999)), the showing necessary

to defeat a motion under Rule 12(b)(2) " 'varies depending on the procedural posture of the litigation,' " AEP-PRI Inc. v. Galtronics Corp., No. 12-cv-8981, 2013 U.S. Dist. LEXIS 114681, at *11 (S.D.N.Y. Aug. 13, 2013) (quoting Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 772 F.3d 81, 84 (2d Cir. 2013)).  Where, as here, the case is still in a pre-discovery posture, the Plaintiff " 'may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.' " Dorchester, 772 F.3d at 84 (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).

" 'This showing may be made through the plaintiffs' own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant[s].' " AEP, 2013 U.S. Dist. LEXIS 114681, at *11-*12 (quoting S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010)).  In considering such evidence, the Court will "construe the pleadings and affidavits in the light most favorable" to the Plaintiff, and will "resolv[e] all doubts in [its] favor." Dorchester, 772 F.3d at 85 (quoting S. New Eng. Tel. Co., 624 F.3d at 138).  However, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks, 714 F.3d 659, 673 (2d Cir. 2013).

> ### b.     New York's Long-Arm Statute

The long-arm analysis has two components, the first of which requires the Court to look to the law of the state in which the district court is located.  See Brady, 101 F. Supp. 3d at 229 (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007)).   In support of exercising jurisdiction over Saturna Group and PLS, the Plaintiff refers to the following provisions of New York's long-arm statute:

> As to any cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . :
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .

 3. commits a tortious act without the state causing injury to a person or property within the state . . . if he . . .

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

New York Civil Practice Law and Rules ("CPLR") § 302(a).

For the reasons that follow, the Plaintiff has failed to make a *prima facie* showing of personal jurisdiction under either of these standards.

### i.   CPLR 302(a)(1): The Transacting Business Standard

As to the first of these provisions, "[a] nondomiciliary 'transacts business' under CPLR 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" <u>CutCo Indus. v. Naughton</u>, 806 F.2d 361, 365 (2d Cir. 1986) (quoting <u>McKee Electric Co. v. Rauland-Borg Corp.</u>, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967))

"No single event or contact connecting the defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." <u>Id.</u> at 365; <u>see</u> <u>Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.3d 50, 62 (2d Cir. 2012) ("Although it is impossible to precisely fix those acts that constitute a transaction of business . . . it is the quality of the defendants' New York contacts that is the primary consideration" (quoting <u>Fischbarg v. Doucet</u>, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007)).

It has been noted that "[s]everal factors should be considered in determining whether an out-of-state defendant transacts business in New York in such a way that it constitutes purposeful activity so as to satisfy the first step of the test," including:

   (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contact; and (iv) whether the contract requires

[defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Allied Dynamics Corp. v. Kennametal, Inc., 965 F. Supp. 2d 276, 291 (E.D.N.Y. 2013) (quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004)).

An additional element of this standard requires that the Plaintiff's "claim against the nondomiciliary . . . arise out of that business activity." CutCo Indus., 806 F.2d at 365 (citing McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981), for the proposition that "an 'articulable nexus between the business transacted and the cause of action sued upon' is essential"); see Best Van Lines, 490 F.3d at 246 (observing that "New York courts evaluating specific jurisdiction under [CPLR] 302(a)(1) . . . must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction" (quoting Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 166, 850 N.E.2d 1140 (2006))); Novak v. Overture Servs., 309 F. Supp. 2d 446, 454 (E.D.N.Y. 2004) (the second prong of the standard requires that the subject business transaction "possess a 'nexus' with or bear a 'substantial relationship' to the cause of action").

Applying these standards, the Court concludes that neither Saturna Group nor PLS transacts business in this state within the meaning of CPLR § 302(a)(1). In particular, there is no legally sufficient allegation or evidence that either of these entities took any actions that could reasonably be seen as purposefully availing themselves of the New York market.

According to the affidavits of Chow and Park, which are largely uncontroverted, neither Saturna Group nor PLS is incorporated, headquartered, or registered to do business in New York; neither conducts any regular or meaningful business in this state; neither maintains an office, telephone number, bank account, or property here; and neither employs any New York-based staff.

Applied here, none of the analytical factors for assessing the quality of a non-domiciliary's contacts with New York is satisfied. For example, the Plaintiff does not allege, and there is no

evidence to establish that either entity has an ongoing contractual relationship with any New York corporation, let alone that any such contracts were negotiated or executed in this state, or that associated business trips to New York were made.  On the contrary, according to Chow, none of Saturna Group's current clients is registered to do business in New York, and none of its clients has ever been incorporated in this state.  Saturna Group also denies ever conducting meetings or making in-person business appearances here.

Similarly, Park asserts that PLS has never entered into any contract to provide accounting services in New York, and none of the firm's clients is domiciled here.  Nor has the company held any board meetings in New York, and none of its officers has attended a business conference or similar function in this state.

Both companies deny engaging in any advertising efforts designed to cultivate business in the New York market.

Although the choice-of-law provision in the APA provides for that agreement to be interpreted according to New York law, as discussed above, neither Saturna Group nor PLS is a signatory to the APA, and neither is so closely related to this dispute that it makes sense to bind them to the terms of that agreement.

Therefore, it also follows logically that no basis exists for concluding that the Plaintiff's current claims against Saturna Group and PLS arise out of any transaction of business on their part within New York.  Indeed, Chow stated that the retainer agreement between Saturna Group and Redhawk did not contemplate the performance of any work in New York.  Nor was that agreement negotiated or executed in this state.  In fact, all of the relevant work performed by Saturna Group was apparently performed at its offices in Vancouver.

The retainer agreement between PLS and Redhawk similarly does not provide for the provision of any professional services in New York, nor is there any allegation or proof that PLS did, in actuality, perform any work in the state.

Accordingly, viewing in totality the quality of the contacts that Saturna Group and PLS have with New York, the Court concludes that the exercise of jurisdiction over either entity under CPLR § 302(a)(1) would not be proper.

ii.      CPLR § 302(a)(3): The Reasonably Expectant Tortfeasor Standard

The Court reaches a similar conclusion under the second relevant long-arm provision, namely, CPLR § 302(a)(3).  That section provides for jurisdiction over a non-domiciliary if:

> (1) the Defendants committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the Defendants expected or reasonably should have expected the act to have consequences in the state; [and] (5) the Defendants derive substantial revenue from interstate or international commerce.

Skrodzki v. Marcello, 810 F. Supp. 2d 501, 519 (E.D.N.Y. 2011) (Spatt, J.) (brackets omitted) (quoting Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC, 450 F.3d 100, 106 (2d Cir. 2006)).

Initially, at this early stage, " 'the plaintiff need not actually prove that defendant committed a tort but rather need only state a colorable cause of action.' "  Id. at 519 (quoting Sole Resort 450 F.3d at 106).  In the Court's view, the Plaintiff's allegations of wrongdoing against Saturna Group and PLS are sufficient at this juncture to colorably state claims for tortious conduct committed outside of New York, and the movants, though denying liability, do not contend otherwise.  Accordingly, for purposes of this analysis, AMD has sustained its minimal burden under the first two elements.  However, the Court finds that the Plaintiff cannot satisfy the balance of the test.

In particular, as to the third element, "an injury caused by tortious conduct is *not* deemed to cause injury in New York merely because the injured party is a resident of New York."  Ivy Mar Co. v. C.R. Seasons Ltd., No. 95-cv-0508, 1997 U.S. Dist. LEXIS 897, at *15 (E.D.N.Y. Jan. 24, 1997) (citing Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1889)) (emphasis supplied).  Rather, " 'courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-the-injury test, which asks them to locate the 'original event which caused

the injury.' " HomeoPet LLC v. Speed Lab., Inc., No. 14-cv-663, 2014 U.S. Dist. LEXIS 79746, at *29 (E.D.N.Y. June 11, 2014) (quoting Bank Brussels, 171 F.3d at 791).

In this regard, " 'it has been held that the situs of a nonphysical, commercial injury is where the critical events associated with the dispute took place.' " Id. at *29 (quoting Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 38-39 (2d Cir. 2010)). Thus, "[t]he 'original event' is 'generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort.' " Id. at *29-*30 (quoting Bank Brussels, 171 F.3d at 791).

Accordingly, "New York courts have consistently found that mere economic consequential damages of an out-of-state tort does not amount to 'injury to person or property within the state' for purposes of § 302(a)(3)." Ivy Mar, 1997 U.S. Dist. LEXIS 897, at *15; see also Penguin Grp., 609 F.3d at 38 ("It is settled New York law that the suffering of economic damages is New York is insufficient, alone, to establish a 'direct' injury in New York for [CPLR] § 302(a)(3) purposes" (citation omitted)); Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 94 (2d Cir. 1975) (noting Second Circuit precedent holding that "section 302(a)(3) is not satisfied by remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here").

In this case, the situs of the injury is not New York. Even accepting all of the Plaintiff's well-pled factual allegations as true, it is clear that the original event which caused the injury – namely, the movants' provision of allegedly negligent accounting and auditing services to Redhawk – occurred outside of New York, either at Saturna Group's offices in Vancouver or PLS's offices in California. In the Court's view, the only discernible consequence that these actions had in New York came later, in the form of purely commercial injury to AMD. See, e.g., Pl. Opp. Memo of Law, DE [35], at 12 (arguing that venue is proper in the EDNY, in part, because AMD "suffered money injury within the State of New York"). As the cases cited above make clear, such consequential

economic suffering is plainly insufficient to establish that an actionable in-state injury was caused by tortious conduct elsewhere.

Accordingly, the Court finds that the allegedly tortious conduct by Saturna Group and PLS did not cause a cognizable injury in this state.  It therefore follows that personal jurisdiction under CPLR § 302(a)(3) is inappropriate.  Thus, the Court concludes that it lacks authority under New York's long-arm statute to exercise personal jurisdiction over these Defendants, and it need not consider whether such jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  See, e.g., Brady, 101 F. Supp. 3d at 229-30 (noting that if state law supports exercising jurisdiction, the Court "must then consider 'whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution'" (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

For these reasons, the motions by Saturna Group and PLS to dismiss the amended complaint for lack of personal jurisdiction are granted.

**B.      Venue**

The Court will next consider whether venue for the remainder of this case is properly laid in this District.  As noted above, MacDonald Tuskey moves under Rule 12(b)(3) to dismiss the amended complaint based on improper venue, contending that the forum selection clause in the APA requires any dispute arising out of that agreement to be litigated in the SDNY.

In this regard, MacDonald Tuskey concedes that, although a non-signatory to the APA, it nevertheless acted as counsel to Redhawk in connection with the agreement and the underlying SEC Filings, and therefore satisfies the "closely-related" standard discussed above.  See MacDonald Tuskey Memo of Law, DE [29], at 6 (admitting that it "aided in the APA and acted as counsel to Redhawk" and therefore "it is foreseeable that the forum selection clause would be enforced as to

MacDonald [Tuskey]").  Accordingly, MacDonald Tuskey does not challenge the Court's jurisdiction over it, but asserts that the contract at issue requires this case to proceed in the SDNY.

Although maintaining that the Eastern District is an appropriate venue, AMD does not materially dispute that MacDonald Tuskey satisfies the "closely-related" test and is therefore entitled to enforce the forum selection clause.  Further, AMD does not deny the existence or enforceability of the forum selection clause; and it admits that a transfer of this case to the SDNY for resolution on the merits is a preferable and more equitable remedy than outright dismissal.

The Court also notes that, although it did not file a motion to enforce the forum selection clause, in its amended answer, Redhawk asserted an affirmative defense based on improper venue, also contending that any dispute arising from the APA is required to proceed in the SDNY.

Under these circumstances, where no party contests the validity or enforceability of the forum selection clause; and the clause plainly and unambiguously designates a venue other than the Plaintiff's chosen venue; the Court finds that the forum selection clause should be enforced, and this case transferred to the contractually-designated venue, namely, the SDNY.

Indeed, it is well-settled that " '[w]here, as here, the parties' designation of a forum for the resolution of disputes is apparent from the face of their agreement, they will be directed to litigate before the specified tribunal.' "  United States Bank N.A. v. Ables & Hall Builders, 582 F. Supp. 2d 605, 613 (S.D.N.Y. 2008) (quoting Micro Balanced Prods. Corp. v. Hlavin Indus., 238 A.D.2d 284, 285, 667 N.Y.S.2d 1, 2 (1st Dep't 1997)); see Yakin v. Tyler Hill Corp., 566 F.3d 72, 76 (2d Cir. 2009) (noting that "[a] forum selection clause may bind parties to either a specific jurisdiction or, as here, a specific venue").

However, rather than dismiss the pleading, as MacDonald Tuskey requests, the Court, in its discretion, finds that the interests of justice will be better served by transferring this case to the SDNY for resolution on the merits.  See, e.g., Zaltz v. JDATE, 952 F. Supp. 2d 439, 446 n.3 (E.D.N.Y. 2013) (exercising discretion to transfer the case pursuant to 28 U.S.C. § 1404(a), rather than dismiss

the case pursuant to Rule 12(b)(3)); <u>Prospect Capital Corp. v. Bender</u>, No. 09-cv-826, 2009 U.S. Dist. LEXIS 119013, at *24 (S.D.N.Y. Dec. 21, 2009) (noting that "in cases such as this where there are open motions that go to substantive issues that relate to the merits of a claim, transfer is preferable to dismissal so that the transferee court can address the substantive claims" (citations omitted)).

Accordingly, the Court grants the motion to dismiss by MacDonald Tuskey to the limited extent of enforcing the forum selection clause and transferring this matter to the SDNY for all further proceedings.

### III.   CONCLUSION

Based on the foregoing, the Court makes the following orders:

(1) The Court grants the motion by Saturna Group, DE [30], to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(2) on the ground that the Court lacks personal jurisdiction over it;

(2) The motion by Saturna Group, DE [42], to dismiss Redhawk's amended cross-claims is denied as moot;

(3) The Court also grants the motion by PLS, DE [28], to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(2) on the ground that the Court lacks personal jurisdiction over it; and

(4) The Court grants in part the motion by MacDonald Tuskey, DE [29], to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(3) on the ground that venue in the EDNY is improper. However, rather than dismiss the claims against MacDonald Tuskey, the Court, in its discretion, is transferring this case to the Southern District of New York pursuant to the forum selection clause in the APA.

The Court need not reach the parties' remaining contentions, which are administratively denied without prejudice, and may be raised anew upon transfer to the Southern District.

The clerk of the Court is respectfully directed to effectuate the transfer.

It is **SO ORDERED.**

Dated:          Central Islip, New York
                July 15, 2016                       _/s/ Arthur D. Spatt_
                                                    ARTHUR D. SPATT
                                                    United States District Judge