UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                      :

AMERICAN MEDICAL DISTRIBUTORS,   :

                       Plaintiff,   :

                  - against -     :

MACDONALD TUSKEY and REDHAWK  :
HOLDINGS CORP. f/k/a INDEPENDENCE  :
ENERGY CORP.,     :

                     Defendants.  :

----------------------------------------------------------X

16-CV-6016 (VSB)

**OPINION & ORDER**

Appearances:

Ahmed A. Massoud
Lisa Pashkoff
Massoud & Pashkoff, LLP
New York, New York
*Counsel for Plaintiff*

Mark David Hunter
Jenny D. Johnson-Sardella
Leser Hunter Taubman & Taubman, PLLC
Coral Gables, Florida
*Counsel for Defendant Macdonald Tuskey*

Samuel E. Masur
Gordon Arata McCollam Duplantis & Eagan, LLC
Lafayette, Louisiana
*Counsel for Defendant, Cross-Claimant, and Counter-Claimant Redhawk Holdings Corp.*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff American Medical Distributors, Inc. brings this action against Canadian law firm Macdonald Tuskey ("Macdonald") and Redhawk Holdings Corp., formerly Independence Energy Corp. ("Redhawk"), alleging claims for negligence and negligent misrepresentation related to materially false statements made and filed with the U.S. Securities and Exchange

Commission ("SEC"), upon which Plaintiff relied in entering into an Asset Purchase Agreement ("APA") with Redhawk. Redhawk also brings cross-claims against Macdonald, counterclaims against Plaintiff, and a third-party complaint against Gregory Rotelli.

Before me is Macdonald's motion to dismiss Plaintiff's amended complaint, as well as Macdonald's motion to dismiss Redhawk's amended cross-claims. Because I find that Plaintiff has not plausibly alleged that Macdonald owed it a duty, Macdonald's motion to dismiss Plaintiff's amended complaint is GRANTED. Additionally, because Redhawk has not plausibly alleged any of its cross-claims against Macdonald, Macdonald's motion to dismiss Redhawk's amended cross-claims is GRANTED. Further, in light of the procedural history of the case and the fact that Plaintiff had multiple opportunities to amend its complaint, I find that any amendment would be futile and thus Plaintiff's claims against Macdonald, as well as Redhawk's cross-claims against Macdonald, are dismissed with prejudice.

## I. Background and Procedural History

This action was initially brought before Judge Arthur D. Spatt in the Eastern District of New York, and the factual background of this action, along with a procedural history prior to the case coming before me, is fully set forth in Judge Spatt's July 15, 2016 Memorandum of Decision and Order in this case.[1] (Doc. 51.) Therefore, I only recount the procedural history relevant to the instant motion.

Plaintiff filed its complaint against Defendants Saturna Group Chartered Accountants, LLP ("Saturna"), PLS CPAs ("PLS"), and Macdonald on November 16, 2015. (Doc. 1.) In

---

[1] Capitalized terms not otherwise defined are given the meaning ascribed to them in Judge Spatt's Memorandum of Decision and Order. (*See* Doc. 51.) Any factual references are drawn from the allegations of the Amended Complaint, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

response to the complaint, on January 22, 2016, Macdonald filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) for improper venue and lack of standing. (Doc. 18.) This motion to dismiss was rendered moot when on February 3, 2016, Plaintiff filed an amended complaint adding, amongst other things, claims against Redhawk ("Amended Complaint"). (*See* Doc. 22.) Macdonald then filed a motion to dismiss the Amended Complaint, again pursuant to Rules 12(b)(3) and 12(b)(6) for improper venue, lack of standing, and failure to state a claim. (Doc. 29.) On March 18, 2016, Redhawk filed an answer to the Amended Complaint and asserted cross-claims against Macdonald based on common law contribution and contributory negligence, fraud, negligence, and breach of contract. (Doc. 33.) On April 11, 2016, Macdonald filed a motion to dismiss Redhawk's cross-claims pursuant to Rule 12(b)(6). (Doc. 36.) On April 21, 2016, Redhawk filed its Amended Answer adding third-party claims against Gregory Rotelli, a director of Redhawk,[2] and rendering Macdonald's motion to dismiss Redhawk's cross-claims moot. (Doc. 39.) On May 9, 2016 Macdonald filed a renewed motion to dismiss the amended cross-claims under Rule 12(b)(6). (Doc. 41.)

On July 15, 2016, Judge Spatt issued an opinion finding that the case was "governed by a valid forum selection clause, which is enforceable as against Plaintiff, Redhawk, and Macdonald . . . and which requires that [the] case be transferred to the United States District Court for the Southern District of New York." (Doc. 51, at 4.) Accordingly, Judge Spatt granted in part Macdonald's motion to dismiss the Amended Complaint and amended cross-claims on the ground of improper venue and transferred the case to the Southern District of New York. (*Id*. at 21.) The case was assigned to me on July 28, 2016.

---

[2] Redhawk's amended answer is titled Amended Answer, Including Defenses, Counterclaim, Cross-Claims, And Impleader Claim of Defendant Redhawk Holdings Corp. ("Amended Answer").

3

On August 29, 2016, I issued an Order terminating Saturna and PLS in accordance with Judge Spatt's opinion. (Doc. 67.) On October 6, 2016, I conducted a status conference with the parties, at which time I set a briefing schedule for anticipated motions to dismiss. Macdonald then filed its motion to dismiss the Amended Complaint, (Docs. 74–75), and its motion to dismiss Redhawk's amended cross-claims, (Docs. 76–77), on October 14, 2016. Redhawk filed its memorandum in opposition to the motion to dismiss on November 17, 2016, (Doc. 83), and Plaintiff filed its memorandum in opposition to the motion to dismiss the next day, on November 18, 2016, (Doc. 84). Macdonald filed its reply memoranda responding to both Plaintiff and Redhawk on December 2, 2016. (Docs. 86–87.)

## II. **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* Motions to dismiss cross-claims are analyzed under the same standard. *See, e.g.*, *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 350, 353 (S.D.N.Y. 2016); *Rollins v. Green*, No. 06 Civ. 3351(CM), 2007 WL 2186895, *1–3 (S.D.N.Y. July 26, 2007).

### III. Discussion

#### A. *Macdonald's Motion to Dismiss the Amended Complaint*

##### 1. Negligence[3]

"Under New York law, to sustain a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as [a] proximate result of that breach." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 459–60 (S.D.N.Y 2013) (citing *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997)). The existence and scope of a

---

[3] Although Macdonald also argues that Plaintiff lacks *standing* to pursue a negligence claim against Macdonald because Macdonald was not Plaintiff's counsel, (Macdonald AMD Reply 3), this fact has no impact on Plaintiff's standing here. Indeed, none of the cases cited by Macdonald in support of its standing argument address standing— they rather address lack of contractual privity. (*See* Macdonald AMD Mem. 4.) "Macdonald AMD Mem." refers to Defendant Macdonald Tuskey's Memorandum in Support of Motion to Dismiss Amended Complaint for Failure to State a Claim and Lack of Standing, filed October 14, 2016. (Doc. 75.) "Macdonald AMD Reply" refers to Defendant Macdonald Tuskey's Reply Memorandum in Support of Motion to Dismiss Amended Complaint for Failure to State a Claim and Lack of Standing, filed December 2, 2016. (Doc. 86.)

defendant's duty is a question of law for the courts. *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 727 N.Y.S.2d 49, 49 (2001). "Absent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Id.*

New York courts have generally found that "absent proof of fraud, collusion, malicious acts or other special circumstances, a plaintiff may not sue an attorney for simple negligence absent privity of contract." *Jordan v. Lipsig, Sullivan, Mollen & Liapakis, P.C.*, 689 F. Supp. 192, 195 (S.D.N.Y. 1988) (collecting New York state cases); *see also Benzemann v. Citibank N.A.*, 53 N.Y.S.3d 33, 34 (1st Dep't 2017) (upholding dismissal of plaintiff's negligence claims against a law firm and its named partner where there were "no allegations of privity or near-privity," nor were there "any non-conclusory allegations of their fraud, collusion, malice or bad faith" (internal quotation marks omitted)).

In arguing that Macdonald owes it a duty, Plaintiff cites to the "special facts" doctrine, which applies when "one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Jana L. v. W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 134 (1st Dep't 2005) (quoting *Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 37 (1st Dep't 1996)). This doctrine "requires satisfaction of a two-prong test: that the material fact was information 'peculiarly within the knowledge' of [the defendant], and that the information was not such that could have been discovered by [the plaintiff] through the 'exercise of ordinary intelligence.'" *Id.* at 135 (quoting *Black v. Chittenden*, 511 N.Y.S.2d 833, 835 (1986)).

However, the facts and holding in *Jana*, the case cited by Plaintiff for the application of the "special facts" doctrine, illustrates the inapplicability of that doctrine to the instant case. In *Jana*, the First Department explicitly found that the "special facts" doctrine did not apply where,

6

approximately ninety minutes after plaintiff was assaulted at defendant West Realty's premises, West Realty and defendant Associates finalized a real estate closing for those premises. *Id.* at 132–33. In so finding, the First Department specifically noted that Associates had "misapplied" the doctrine and that Associates had a duty to inquire at closing whether West Realty had knowledge of any incidents that could implicate indemnification. *Id.* at 135. Thus, Associates's conclusory statement that information giving rise to the incident could not have been obtained through the exercise of ordinary intelligence was insufficient to justify application of the "special facts" doctrine. *Id.*

Here, as an initial matter—unlike in *Jana* where the material fact was peculiarly within the knowledge West Realty since the incident occurred on its property—there are no allegations that Macdonald had firsthand knowledge regarding the disposition of the Quinlan Lease and the Coleman Leases. Moreover, Plaintiff fails to allege any facts showing that the information related to the Quinlan Lease and Coleman Leases could not have been discovered through inquiry or ordinary intelligence. In fact, Plaintiff could have inquired prior to or at closing whether Redhawk had or intended to take actions that would or could impair the value of its shares. As a result, the Amended Complaint does not allege that Macdonald had a duty to Plaintiff and, therefore, Macdonald's motion to dismiss Plaintiff's negligence claim is granted.

### 2. Negligent Misrepresentation

"The elements of a claim for negligent misrepresentation under New York law are: '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that it should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the

plaintiff reasonably relied on it to his or her detriment.'" *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 625 (S.D.N.Y. 2011) (quoting *Hydro Investors v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).

New York courts consider three factors when determining whether a "special relationship" exists: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* (quoting *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)). "The parties must enjoy a relationship of trust and reliance closer than that of the ordinary buyer and seller, and an arm's length business relationship is not enough." *Id.* (quoting *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999)). Moreover, a claim for negligent misrepresentation under New York law requires, at a minimum, that "the defendant made a false representation on which the plaintiff reasonably relied." *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 450 F. App'x 32, 34 (2d Cir. 2011) (summary order) (quoting *Hydro Investors*, 227 F.3d at 20). There must also be allegations evincing a defendant's "recognition of Plaintiffs' reliance upon their services by meeting with and making representations to Plaintiffs." *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 216 (S.D.N.Y. 2002) (internal quotation marks omitted).

When analyzing negligent misrepresentation claims against lawyers by non-clients in particular, "the only cases . . . holding that an attorney had, or was properly alleged to have had, a relationship approaching privity with a third-party are those in which the attorney issued an 'opinion letter' to his client in connection with a transaction for the purpose of reliance by the third-party on its contents." *Doehla v. Wathne Ltd.*, No. 98 Civ. 6087 CSH, 1999 WL 566311, at

8

*20 (S.D.N.Y. Aug. 3, 1999) (citing *Prudential Ins. Co. v. Dewey, Ballantine*, 80 N.Y.2d 377, 385 (1992)). "If it were otherwise, every non-client would have a claim against every law firm who failed to exercise due care in the context of representing a long-standing client in a financial transaction." *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 286 (S.D.N.Y. 2009). Thus, in order to sustain a negligent misrepresentation claim, a non-client plaintiff must provide specific allegations that the law firm both had specialized knowledge and intended for a third-party to rely on that specialized knowledge—reliance by a third party must be the "end and aim" of the law firm's representation. *Doehla*, 1999 WL 566311, at *20; *see also Eurycleia Partners, LP v. Seward & Kissel, LLP*, 849 N.Y.S.2d 510, 511–12 (1st Dep't 2007), *aff'd*, 883 N.Y.S.2d 147 (2009).

Plaintiff simply fails to allege any facts supporting the conclusion that privity, or the functional equivalent of privity, existed between Plaintiff and Macdonald such that there was a special relationship. *See Thomas H. Lee Equity Fund V*, 612 F. Supp. 2d at 286 (finding that a law firm's mere knowledge of the "particulars of the company's business and of the true situation underlying the misrepresentations pertaining to that business" was not enough to evince a near-privity relationship); *see also Eurycleia Partners*, 849 N.Y.S.2d at 511–12 (finding that plaintiffs failed to allege privity, or a relationship close to privity, so as to state a cause of action for negligent misrepresentation, where plaintiff alleged that the counsel to the fund made numerous material misrepresentations of fact and omitted others to induce plaintiffs to invest in or remain invested in the fund, including by failing to make required SEC filings). Plaintiff also fails to allege any specific representations Macdonald made to it upon which it relied, other than the fact that the SEC filings listed certain of Redhawk's leases that were later discontinued. (*See*

Am. Compl. ¶¶ 52–55.)[4] Because Plaintiff fails to make any allegations that Macdonald intended for a third-party to rely on its knowledge of Redhawk, or in fact that Macdonald made any specific misrepresentations to Plaintiff at all, Plaintiff—a non-client—has not alleged facts sufficient to evince a near-privity relationship between it and Macdonald. As such, Plaintiff's negligent misrepresentation claim against Macdonald is dismissed.

### B.    *Macdonald's Motion to Dismiss Redhawk's Cross-Claims*

In the Amended Answer, Redhawk asserts cross-claims against Macdonald for (1) contribution and comparative/contributory negligence under New York's Civil Practice Law and Rules ("C.P.L.R.") Sections 1401 and 1411, fraud and/or misrepresentation, and breach of duty, (Am. Answer ¶¶ 27–29),[5] all "based essentially on the allegations in Plaintiff's Amended Complaint," (Redhawk Opp. 1);[6] and (2) breach of contract and legal malpractice, (Am. Answer ¶¶ 32–42). For the reasons that follow, Redhawk's cross-claims against Macdonald are dismissed with prejudice.

#### 1.    Contribution and Comparative/Contributory Negligence

With respect to Plaintiff's contribution claim, under C.P.L.R. § 1401, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." This means that generally, an alleged tortfeasor "may bring an action for contribution against another [alleged] tortfeasor . . . if the two are 'subject to liability for damages for the same

---

[4] "Am. Compl." refers to the Amended Complaint filed in this action on February 3, 2016. (Doc. 22.)

[5] "Am. Answer" refers to the Amended Answer, Including Defenses, Counterclaim, and Cross-Claims, and Impleader Claim of Defendant Redhawk Holdings Corp, filed April 21, 2016. (Doc. 39.)

[6] "Redhawk Opp." refers to Defendant Redhawk Holding Corp.'s Response and Opposition to the Motion to Dismiss its Amended Cross-Claims for Failure to State a Claim, filed November 17, 2016. (Doc. 83.)

10

personal injury.'" *Emanuel v. Griffin*, No. 13 Civ. 1806(JMF), 2013 WL 5477505, at *10 (S.D.N.Y Oct. 2, 2013) (quoting N.Y. C.P.L.R. § 1401) (dismissing cross-claims against defendants where the court had previously dismissed the original claims against those defendants); *see also* Alexander, Practice Commentary, N.Y. C.P.L.R. § 1401 (noting that the tortfeasor against whom contribution is sought must typically be "subject to liability" to the plaintiff, unless the absence of direct liability is merely the result of a special defense).

"The crucial element in allowing a claim for contribution to proceed is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Amguard Ins. Co. v. Getty Realty Corp.*, 147 F. Supp. 3d 212, 218 (S.D.N.Y. 2015) (quoting *Amusement Indus. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010)) (finding allegations sufficient where an agent had contracted to maintain and/or remove trees in specific area, failed to remove evidently dangerous trees, and that failure allegedly caused damage to plaintiff in the adjourning property). Therefore, "[a] third-party defendant may be liable for contribution where it breaches a duty to either (a) the third-party plaintiff seeking contribution or (b) the first-party plaintiff seeking redress for the underlying tort." *Fernandez v. New England Motor Freight, Inc.*, No. 12-CV-6536 (VEC), 2015 WL 4002233, at *5 (S.D.N.Y. July 1, 2015) (quoting *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F. Supp. 2d 322, 327 (S.D.N.Y. 2011)); *see also* Alexander, Practice Commentary, N.Y. C.P.L.R. § 1401 (stating that courts have recognized that in "some 'unusual' cases, a claim for contribution may be premised on breach of a duty owed to the party seeking contribution"); *Garrett v. Holiday Inns, Inc.*, 460 N.Y.S.2d 774, 778–80 (1983) (finding that, where actions were brought on behalf of motel guests resulting from a fire, that contribution claim against municipality could proceed based on theory that municipality knew blatant fire and safety

violations existed but failed to require the motel to comply).

Here, Redhawk's cross-claim is based entirely on Plaintiff's Amended Complaint. (*See* Am. Answer ¶ 27.) The Amended Complaint states only that Macdonald was retained to prepare and review Redhawk's SEC filings, (Am. Compl. ¶¶ 25–28), that it knew about Redhawk's intent not to renew the Quinlan Lease and Coleman Leases, (*id.* ¶ 43), and that it failed to disclose that fact, (*id.* ¶¶ 39, 42, 44, 52–53). Plaintiff's allegations that Macdonald knew about Redhawk's intent not to renew these leases and failed to disclose that fact are conclusory and unsupported by any other allegations in the Amended Complaint. Similarly, Redhawk does not include any specific allegations concerning Macdonald's knowledge of Redhawk's intentions with regard to the leases, nor does it identify any evidence that Macdonald knew at the time the APA was executed that Redhawk had disposed of the leases. In fact, Redhawk affirmatively states its Amended Answer that it has "no evidence Macdonald Tuskey had knowledge of or intentionally facilitated [the misleading of investors during this period]." (Am. Answer ¶ 38.) This assertion alone dooms Redhawk's contribution claim. In any event, Redhawk's contribution claim, based entirely on the conclusory allegations in Plaintiff's Amended Complaint, cannot survive.

As to Redhawk's comparative/contributory negligence claim under C.P.L.R. § 1411, Macdonald is correct that the doctrine is inapplicable here, where a defendant seeks to recover from a co-defendant. (*See* Macdonald Redhawk Reply 3.)[7] As an initial matter, "when New York, by statute, adopted comparative negligence, it abolished . . . contributory negligence as a complete defense." *Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 300 (2d

---

[7] "MacDonald Redhawk Reply" refers to Defendant Macdonald Tuskey's Reply Memorandum in Support of Motion to Dismiss Amended Cross-Claims of Defendant Redhawk Holdings Corp. for Failure to State a Claim, filed December 2, 2016. (Doc. 87.)

12

Cir. 1997). Thus, New York follows the doctrine of comparative negligence, where "liability is split between plaintiffs and defendants based on the relative culpability and causal significance of their conduct." *Id.* Accordingly, C.P.L.R. § 1411 provides that:

> In any action to recover damages for personal injury . . . the culpable conduct attributable to the claimant . . . including contributory negligence . . . shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant . . . bears to the culpable conduct which caused the damages.

Therefore, the doctrine of comparative negligence is a doctrine in which the amount that a *plaintiff* can recover is reduced if the *plaintiff* is found to have been negligent and his or her own negligence contributed to the injury—it is not a claim that is applicable against co-defendants. *See Integrated Waste*, 113 F.3d at 300; *Scoran v. Overseas Shipholding Grp.*, 703 F. Supp. 2d 437, 448 (S.D.N.Y. 2010). As a result, Redhawk's cross-claims for contribution and comparative negligence are dismissed.

## 2. Fraud and/or Misrepresentation and Breach of Duty

In New York, "the elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681–83 (2d Cir. 2012) (summary order) (quoting *Eurycleia Partners*, 883 N.Y.S.2d at 150). To plead a fraud claim, a plaintiff must satisfy Rule 9(b)'s pleading requirements, which require that a plaintiff "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)). A plaintiff

must also "plead the factual basis which gives rise to a strong inference of fraudulent intent." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). This "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Here, as Macdonald notes, Redhawk does not point to any facts showing that Macdonald "made knowing misrepresentations to Redhawk in an effort to induce any action on the part of Redhawk." (Macdonald Redhawk Reply 4.) Rather, Redhawk relies only on Plaintiff's Amended Complaint. (*See* Am. Answer ¶ 28.) Thus, Redhawk simply does not allege facts to support a cross-claim for fraud against Macdonald, and its fraud and/or misrepresentation cross-claim is dismissed.

With respect to Redhawk's cross-claim that Macdonald breached a duty, Redhawk similarly points only to Plaintiff's Amended Complaint and states that Macdonald is liable to Redhawk "for breach of the duties of care and loyalty that [it] owed to Redhawk, including by [its] malpractice and breach of other professional duties." (*See id.* ¶ 29.) "To establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008). Furthermore, "an attorney who makes fraudulent misstatements of fact or law to his client or who fraudulently conceals pertinent information may be required to disgorge any ill-gotten gain even if the plaintiff sustains no direct economic loss." *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 401 (S.D.N.Y. 2000).

Macdonald contends that Plaintiff has failed to state a claim because Plaintiff's Amended Complaint does not allege any actionable misconduct by Macdonald, nor does it allege that any damages attributable to Redhawk were directly caused by Macdonald's alleged misconduct, specifically because the Amended Complaint references Redhawk's decision to discontinue its own interests in the leases. (*See* Macdonald Redhawk Mem. 6–7; Macdonald Redhawk Reply 5.)[8] I find that the allegations in the Amended Complaint regarding Macdonald's conduct, which are, for the most part, conclusory, do not suffice to support Redhawk's cross-claim for breach of duty.[9]

### 3. Breach of Contract and Legal Malpractice

Under New York law,[10] a breach of contract claim brought against a professional, such as an attorney, may be maintained "based on 'an implied promise to exercise due care in performing the services required by the contract.'" *Schweizer*, 93 F. Supp. 2d at 397 (quoting *Santulli v. Englert, Reilly & McHugh*, 579 N.Y.S.2d 324, 326 (1992)). However where, as here, the contract claim "is nothing but a redundant pleading of a timely malpractice claim, it should be dismissed as duplicative," *id.* at 398, and I thus dismiss Redhawk's cross-claim for breach of contract, (*see* Am. Answer ¶ 41 ("The breaches of duty discussed above also constitute legal malpractice by Macdonald Tuskey, in providing legal services to the Redhawk.")).

"To prevail on a claim of legal malpractice—a specific form of negligence—a plaintiff

---

[8] "Macdonald Redhawk Mem." refers to Defendant Macdonald Tuskey's Memorandum in Support of Motion to Dismiss Amended Cross-Claims of Defendant Redhawk Holdings Corp. for Failure to State a Claim, filed October 14, 2016. (Doc. 77.)

[9] In any event, although not raised by the parties, Redhawk's cross-claim appears to be entirely duplicative of its legal malpractice claim. *See Schweizer*, 93 F. Supp. 2d at 400 (noting the fiduciary-breach claim based on defendants' alleged plan to settle the case should be dismissed because it duplicated plaintiff's claim for malpractice).

[10] I will analyze this claim under New York law, as both Redhawk and Macdonald cite to New York law in their briefs. *See Checkrite Ltd. v. Ill. Nat' l Ins. Co.*, 95 F. Supp. 2d 180, 188 (S.D.N.Y. 2000) (applying New York law based upon the parties' implicit consent thereto).

must establish the failure of an attorney to exercise the degree of skill commonly exercised by an ordinary member of the legal community, proximately resulting in damages to the client." *Schweizer*, 93 F. Supp. 2d at 393. "The four elements of a legal malpractice claim are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual damage resulting from the professional's negligence." *Id.* "To establish the element of causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages but for the attorney's negligence." *Snolis v. Clare*, 917 N.Y.S.2d 299, 301 (2d Dep't 2011). This causation requirement is a "high bar to attorney malpractice liability." *Flutie Bros. LLC. v. Hayes*, No. 04 Civ. 4187(DAB), 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006). At the motion to dismiss stage, a plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim." *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008). However, "[t]he question of whether a pleading sufficiently alleges proximate cause and, therefore, whether the plaintiff has stated a legal malpractice claim, is appropriately considered by the court on a motion to dismiss." *Henkel v. Wagner*, No. 12 Civ. 4098 (AJN), 2013 WL 12084503, at *6 (S.D.N.Y. Mar. 18, 2013), *aff'd*, 553 F. App'x 106 (2d Cir. 2014).

As argued by Macdonald, (*see* MacDonald Redhawk Mem. 10–11; MacDonald Redhawk Reply 7–8), Redhawk does not allege any facts supporting the "reasonable inference that but for [Macdonald's] negligent acts," it would prevail on its claims, *Henkel*, 2013 WL 12084503, at *6. Rather, Redhawk alleges only that Macdonald was responsible for preparing and filing all of its SEC filings, but that the SEC filings were "incomplete and inaccurate," and that although

Redhawk has "no evidence Macdonald Tuskey had knowledge of or intentionally facilitated [Rotelli's deception of investors]," that it "was essentially willfully ignorant of, or buried its head in the sand, regarding [Rotelli's] activities." (*See* Am. Answer ¶¶ 32–42.) With respect to the alleged deficiencies in its SEC filings, Redhawk provides only a single example: Macdonald's failure to include a note about the expiration date of Redhawk's various oil and gas leases. (*Id.* ¶¶ 36, 38–39.) Finally, Redhawk alleges that but for this failure, the negative results of Rotelli's actions, as alleged by Plaintiff, could have been "mitigated or avoided." (*Id.* ¶ 38.)

However, at no point in the Amended Complaint does Plaintiff reference any failure to provide the expiration date for the leases. Rather, the Amended Complaint focuses solely on Macdonald's failure to timely inform Plaintiff of Redhawk's decision to discontinue its interest in the Quinlan Lease and not to renew its interest in the Coleman Leases. (*Id.* ¶¶ 37–38, 41–47, 52–53.) As such, Redhawk has failed to allege the proximate causation required for its legal malpractice claim to survive, and Redhawk's cross-claim for legal malpractice is dismissed.

## IV.  Conclusion

Because Plaintiff has not plausibly alleged that Macdonald was negligent or made negligent misrepresentations to Plaintiff, and because Redhawk has not plausibly alleged claims against Macdonald for contribution or contributory negligence, fraud, negligence, or breach of contract, Macdonald's motion to dismiss Plaintiff's Amended Complaint, (Doc. 74), is GRANTED, as is Macdonald's motion to dismiss Redhawk's amended cross-claims, (Doc. 76). These claims are dismissed with prejudice because amendment would be futile. The Clerk of Court is respectfully directed to close the open motions at Documents 74 and 76, and terminate Macdonald from this case.

The remaining parties—Plaintiff, Redhawk, and third-party defendant Rotelli—are directed to appear for an initial pretrial conference before me on April 19, 2018 at 10:30 a.m. in Courtroom 518 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Parties are directed to confer and, by April 12, 2018, submit a joint letter, not to exceed three (3) pages, providing the following information in separate paragraphs: (1) a brief description of the nature of the action and the principal defenses thereto; (2) a brief explanation of why jurisdiction and venue lie in this Court; (3) a brief description of any contemplated motions; (4) a brief description of any discovery that has already taken place, and/or that which will be necessary for the parties to engage in meaningful settlement negotiations; (4) a brief description of prior settlement discussions and the prospect of settlement; (6) estimated length of trial; and (7) any other information that the parties believe may assist the Court in advancing the case to settlement or trial; including, but not limited to, a description of any dispositive issue or novel issue raised by the case. It is further ordered that, by April 12, 2018, the parties jointly submit to me a proposed case management plan and scheduling order, a template for which is available at http://nysd.uscourts.gov/judge/Broderick. The status letter and the proposed case management plan should be filed electronically on the Court's Electronic Case Filing ("ECF") system.

SO ORDERED.

Dated: March 23, 2018
      New York, New York

Vernon S. Broderick
United States District Judge